UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

RICHARD RIVERA, LINDA MCLAUGHLIN,
MELANIE Y. TREADWELL DONAHUE, MARTHA
GARCIA, GIOVANNI GANGEMI, LAURA ORR,
LINDA K. ATKINSON, VERA DANIELS, ANN
HAMILTON O'REILLY, LUISA GUARISCO,
GIROLAMA MENNITI, RONALD KRAEMER,
MARIELANA DIDOMENICO LATOSA, CYNTHIA
GONZALEZ, ANNA BIRARDI, NICOLE GARCIA,
ROSE BISCONTI-GERMANI, RUBY INGRAM,
JOHN MARCHETTA, MEENA MAKHIJANI, ALBA
RODRIGUEZ, ROXANNE HARTFIELD, CLETANE
"CLEO" BAZILE, LINDA SUNDACK, KARINA
ULLAH, KENNETH DEFAY, LYNDA ANN ZELL,
ARLENE MACK, MYRA DELESTON, MINNIE
KAPOOR, JACQUELINE MORRIS, LINDA
DIASPARRA, MAX PIERROT, MARY MARGARET
SENTENO-JOSEPH, JOYCE SMIRMAN-JOHNSON,
GLORIA JEANNITON, SUSAN STEUBING, JENI D.
RYMER, MIGDALIA CEPEDA, HERMIA CHANG,
GISELLE CARSENI-HAVITERS, ANNA MARIA
CUPIDO, LORNA FARRINGTON, BERDETTE
THOMPSON, HUIWANG "KATY" WANG, JAVIER
LOPEZ, CARLENE BOYD, MILDRED MATOS,
JANNIE SALCE, LORRAINE TITLEY, LEILA
ISAACS, MARIA G. MONTALVO, LEIGH
SHAFFER and ANNA HERRERA,

|                          | **MEMORANDUM & ORDER** |
|                          | 16-CV-1673 (MKB) (LB)  |

Plaintiffs,

v.

COMMUNICATION WORKERS OF AMERICA,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, COMMUNICATION WORKERS OF
AMERICA – INTERNATIONAL BROTHERHOOD
OF TEAMSTERS PASSENGER SERVICE
EMPLOYEES ASSOCIATION, a/k/a CWA-IBT
ASSOCIATION, and JOHN AND JANE DOES 1–20,

Defendants.

----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiffs, proceeding *pro se*, filed the above-captioned action against the Communication Workers of America ("CWA"), International Brotherhood of Teamsters ("IBT"), Communication Workers of America – International Brotherhood of Teamsters Passenger Service Employees Association a/k/a CWA–IBT Association (the "CWA–IBT Association") and John and Jane Does 1–20, alleging breach of the duty of fair representation under both the Railway Labor Act, 45 U.S.C. § 151 *et seq.* and federal common law. (Compl., Docket Entry No. 1.) On October 28, 2016, Defendants moved to dismiss the Complaint for failure to state a claim and for failure to join an indispensable party pursuant to Rules 12(b)(6) and 12(b)(7), respectively, of the Federal Rules of Civil Procedure. (Defs. Mot. to Dismiss ("Defs. Mot."), Docket Entry No. 83.) On November 15, 2016, the Court referred the motion to Magistrate Judge Lois Bloom for a report and recommendation. (Order dated Nov. 15, 2016.) By report and recommendation dated July 26, 2017 (the "R&R"), Judge Bloom recommended that the Court dismiss the Complaint and grant Plaintiffs leave to amend within thirty days of the date that the Court adopts the R&R. (R&R, Docket Entry No. 86.)

On August 9, 2017, Plaintiffs filed timely objections to the R&R.[1] (Pls. Obj. to the R&R ("Pls. Obj."), Docket Entry No. 88.) Defendants filed a reply to Plaintiffs' objections on August 24, 2017. (Defs. Reply to Pls. Obj. ("Defs. Reply"), Docket Entry No. 89.) For the reasons set forth below, the Court adopts the R&R and grants Plaintiffs sixty days to file an amended complaint.

---

[1] On August 3, 2017, Plaintiff Richard Rivera, purportedly on behalf of all Plaintiffs, requested a sixty-day extension of time to amend the Complaint and to object to the R&R. (Pls. Mot. for Ext. of Time, Docket Entry No. 87.) A few days later on August 9, 2017, Plaintiffs filed objections to the R&R.

## I. Background

Plaintiffs are passenger service agents (the "Agents") who were employed by Trans World Airlines ("TWA") and who became American Airlines ("AA") employees when AA acquired TWA in 2001. (Compl. ¶¶ 1, 11.) At the time of the acquisition, AA assigned all TWA Agents, including Plaintiffs, a date-of-hire seniority date of April 10, 2001, effectively treating them as new hires rather than accounting for their time working at TWA. (*Id.* ¶¶ 11, 37.) AA subsequently merged with US Airways in 2013. (*Id.* ¶ 12.) CWA and IBT, the union representatives of AA and US Airways Agents, respectively, jointly established the CWA–IBT Association, and also elected a seven-member committee comprised of five CWA members and two IBT members (the "CWA–IBT Committee"). (*Id.* ¶¶ 12–14.) The CWA–IBT Committee was charged with, among other things, negotiating a new employment contract with the merged airline carrier (the "Carrier") that included a single, unified employee list in order of seniority. (*Id.*) CWA and IBT also gave certain of its members non-voting CWA–IBT Committee roles, designating Ron Collins and Andy Marshall as Chairpersons, Marge Krueger and Kim Barbaro as Co-Chairpersons, and tasking Christopher Peifer, a union attorney ("Attorney Peifer"), with working with the CWA–IBT Committee. (*Id.* ¶ 15.) The seven CWA–IBT Committee members signed a confidentiality agreement prohibiting disclosure of its discussions and of any contract terms the CWA–IBT Committee proposed to the Carrier. (*Id.* ¶ 16.)

In or around June of 2015, the CWA–IBT Committee unanimously voted in favor of proposing a "letter of agreement" to the Carrier, which included a plan to credit TWA Agents who joined AA at the time of the 2001 acquisition (the "Legacy TWA Agents") for their pre-2001 service working at TWA. (*Id.* ¶¶ 17–22.) "No later than on or about July 29, 2015," the letter of agreement was approved by the Carrier. (*Id.* ¶ 18.)

The CWA–IBT Committee thereafter negotiated with the Carrier periodically regarding other issues, until on or around October 1, 2015, when a tentative agreement with the Carrier was reached. (*Id.* ¶ 22.) The tentative agreement included thirty-seven separate "Articles," including the letter of agreement which contained the CWA–IBT Committee's proposal regarding the seniority of Legacy TWA Agents. (*Id.*)

On October 2, 2015, the CWA–IBT Committee's proposal to credit Legacy TWA Agents for their pre-2001 service was "leaked" to Agents who were employed by AA prior to the 2001 acquisition (the "Legacy AA Agents"). (*Id.* ¶ 24.) Legacy AA Agents were thereafter instructed by "those to whom the . . . seniority integration agreement with the Carrier had been leaked to communicate their opposition thereto to Dennis Trainor, Vice President of District 1 of Defendant CWA." (*Id.* ¶ 26.) Around the same time, and "with the knowledge, consent and affirmative encouragement of Defendants," Legacy AA Agents began circulating a petition "to reverse the [CWA–IBT] [C]ommittee's seniority integration agreement with the Carrier." (*Id.* ¶ 26.) Trainor received "numerous communications" regarding the issue, and agreed to "investigate the matter, and then further respond." (*Id.* ¶ 27.) Plaintiffs allege that Trainor "thereafter communicated with other senior officials of Defendants regarding the effort by said [L]egacy AA [Agents] to reverse the [CWA–IBT] Committee's decision, or otherwise prevent it from being implemented." (*Id.* ¶ 27.)

On October 7, 2015, CWA–IBT Committee Chairperson Collins initiated a conference call with the CWA–IBT Committee members, and informed them that a re-vote "would be required as to whether to integrate" Legacy TWA Agents into the seniority list using a date-of-hire that reflected their pre-2001 service. (*Id.* ¶ 28.) Plaintiffs allege that during this conference call, Collins made knowingly false and materially misleading statements "in a deliberate effort to

prompt its members to reconsider, and reverse, their earlier decision." (*Id.* ¶ 29.) During a second conference call with Collins held later that day, the CWA–IBT Committee voted again, but the vote resulted in a tie due to the absence of one CWA–IBT Committee member. (*Id.* ¶ 32.)

On or around October 17, 2015, the tentative agreement "was presented by Defendants to their respective memberships." (*Id.* ¶ 37.) However, the letter of agreement contained within the tentative agreement did not reflect the CWA–IBT Committee's initial proposal to credit Legacy TWA Agents for their pre-2001 service, "but rather new, substituted language based upon the re-vote on October 19 or 20, 2015" giving all Legacy TWA Agents a date-of-hire seniority of April 10, 2001, leaving in place the seniority decision made in the course of the 2001 acquisition. (*Id.*) Defendants contemporaneously issued a statement to their members disclosing their position, and explaining that a decision to credit Legacy TWA Agents for their pre-2001 service would have "disrupted the seniority of the [L]egacy AA [Agents]." (*Id.* ¶ 38.)

On or around October 19 or 20, 2015, the CWA–IBT Committee voted a third time, which resulted in a five-to-two vote in favor of reversing the prior decision to credit Legacy TWA Agents for their pre-2001 service. (*Id.* ¶ 34.)

Defendants then held a series of meetings to "provide an opportunity for members to ask questions" regarding the terms of the tentative agreement that CWA and IBT members would vote on. (*Id.* ¶ 39.) During one such meeting, on or around November 4, 2015, CWA–IBT Committee members "admitted that [they] had originally voted in favor" of crediting Legacy TWA Agents for their pre-2001 service, but that "a re-vote had subsequently been conducted, and that original decision had been reversed." (*Id.* ¶ 41.) Defendants stated that Legacy TWA Agents would have the right to "'grieve any errors' regarding seniority in arbitration once the

new, combined seniority list was issued." (*Id.* ¶ 46.)  Plaintiffs allege that this statement was made to "deliberately mislead" Legacy TWA Agents "and induce their reliance thereon," although Defendants knew, "but deliberately [failed] to state," that challenges in arbitration would be limited to "actual clerical or other factual errors," and challenges to the decision made regarding the seniority of Legacy TWA Agents would not be permitted.  (*Id.* ¶ 47.)

On November 5, 2015, Defendants signed a revised letter of agreement reflecting the decision not to credit Legacy TWA Agents for their pre-2001 service.  (*Id.* ¶ 48.)  The revised letter of agreement was signed by the Carrier on November 10, 2015.  (*Id.* ¶ 49.)  Balloting of Defendants' respective memberships regarding the tentative agreement began "promptly thereafter."  (*Id.* ¶ 50.)  When balloting closed on or around November 30, 2015, the tentative agreement was ratified by a vote of 6,993 to 2,522.  (*Id.*)  A formal collective bargaining agreement with the Carrier was executed on or around December 7, 2015.  (*Id.*)

Plaintiffs filed suit challenging their placement on the Carrier's seniority list, alleging that Defendants breached their duty of fair representation by preventing Legacy TWA Agents from receiving a seniority status that reflects their time at TWA.

## II. Discussion

### a. Standards of review

#### i. Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir.

2015).  The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.  *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015).  The clear error standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments.  *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation omitted)); *see also DePrima v. N.Y.C. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii.    Rule 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor."  *Concord Assocs. L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18

(2d Cir. 2013).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### b.  Unopposed recommendation

Defendants do not object to Judge Bloom's recommendation that the Court deny their motion to dismiss the Complaint for failure to join AA as an indispensable party.  (R&R 15–16; Defs. Reply 1–7.)

The Court has reviewed the unopposed portion of the R&R and, finding no clear error, the Court adopts this recommendation pursuant to 28 U.S.C. § 636(b)(1).  Accordingly, the Court denies Defendants' motion to dismiss with respect to Plaintiffs' failure to join AA as an indispensable party.[2]

### c.  Plaintiffs' objections to the R&R and Defendants' reply

Plaintiffs object to Judge Bloom's recommendation that the Court dismiss their duty of fair representation claims.  (Pls. Obj. 2–10.)  Defendants argue that Plaintiffs' objections should be struck for failing to comply with the Court's Order dated July 26, 2016 that filings must be personally signed by all Plaintiffs and because the R&R correctly recommended that the Court dismiss Plaintiffs' Complaint.  (*See* Defs. Reply 1–7; Order dated July 26, 2016, Docket Entry No. 78.)  For the reasons discussed below, the Court adopts Judge Bloom's recommendation.[3]

---

[2]  In addition, none of the parties dispute Judge Bloom's finding that an independent federal common law duty of representation — assuming, without deciding, that such a duty exists — is analyzed in the same manner as the duty of fair representation created by federal statute.  (R&R 15.)  Accordingly, the Court finds that the common law duty of fair representation, if any exists, should be analyzed in the same manner as the statutory duty.  Therefore, the Court's duty of fair representation analysis applies to Plaintiffs' claims under both the Railway Labor Act and federal common law.

[3]  Because the Court dismisses Plaintiffs' claims, but grants Plaintiffs leave to amend, the Court declines to strike Plaintiffs' objections and does not address whether they constitute an

### i.    Breach of the duty of fair representation

Judge Bloom recommended that the Court dismiss Plaintiffs' claims under the Railway Labor Act and federal common law because Plaintiffs have failed to allege a causal connection between their injuries and Defendants' actions, and because Plaintiffs have not alleged facts showing that Defendants engaged in arbitrary, discriminatory or bad faith conduct as required to establish a breach of the duty of fair representation.  (R&R 10–12.)

Plaintiffs argue that Judge Bloom erred in recommending dismissal of their claims because the R&R: (1) misapprehended key facts alleged in the Complaint; and (2) improperly applied a heightened legal standard in determining whether Plaintiffs stated a claim for breach of the duty of fair representation, which led to an erroneous finding that Plaintiffs failed to state a claim.  (Pls. Obj. 1–6.)

### 1.    The facts alleged in Plaintiffs' Complaint

Plaintiffs argue that the R&R is based on various facts "which either [] do not appear in the Complaint at all, or which are misinterpreted or misunderstood."  (Pls. Obj. 2.)  Plaintiffs argue that Judge Bloom did not focus on Defendants' alleged misconduct surrounding the 2013 merger and "effectively disregard[ed] . . . all of the Complaint's allegations as to what the Defendants did in the wake of the [CWA–IBT] Committee's original decision . . . ."  (Pls. Obj.

---

unsigned filing under Rule 11 of the Federal Rules of Civil Procedure.  However, the Court reminds Plaintiffs that a *pro se* plaintiff may only represent him or herself in Court, and thus Rivera or any other Plaintiffs may not submit a filing on behalf of other Plaintiffs.  *See Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (noting that 28 U.S.C. § 1654 which permits *pro se* plaintiffs to represent themselves "does not permit unlicensed laymen to represent anyone else other than themselves." (citation and internal quotation marks omitted)); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) (holding that "because *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause . . . [but] must be litigating an interest personal to him"); *Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("[A] person ordinarily may not appear *pro se* in the cause of another person or entity.").

2–3.)  The Court construes Plaintiffs' argument as objecting to Judge Bloom's finding that

"Plaintiffs . . . fail to allege a causal connection between their injuries and the Union Defendants'

alleged actions" because Plaintiffs "[i]n essence, seek a remedy for the diminished status they

were assigned pursuant to the 2001 [acquisition] of TWA [by] AA, an injury that occurred more

than fifteen years ago," (R&R 10), and which predated Defendants' representation of Plaintiffs.

(*Id.*)  *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam)

("We liberally construe pleadings and briefs submitted by *pro se* litigants, reading such

submissions to raise the strongest arguments they suggest." (alteration and internal quotation

marks omitted) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007))).

While Plaintiffs seek a remedy related to their treatment at the time of the 2001

acquisition, the Complaint also alleges misconduct during the course of events surrounding the

2013 merger, which in and of itself may constitute a breach of the duty of fair representation.

(Compl. ¶¶ 23–50.)  *See Haerum v. Air Line Pilots Ass'n*, 892 F.2d 216, 219 (2d Cir. 1989)

(observing that a union's "refusal to renegotiate the seniority list when asked to do so in

November 1987 could be proven a breach of the union's duty of fair representation entirely

independent" of the initial seniority decision made years before).  Therefore, the Court looks to

Plaintiffs' allegations in connection with the 2013 merger in analyzing whether Plaintiffs state a

claim.

### 2.  The legal standard for a duty of fair representation claim

Plaintiffs argue that Judge Bloom improperly applied a heightened legal standard in

determining whether Plaintiffs state a claim for breach of the duty of fair representation.

(Pls. Obj. 4–6.)

"The duty of fair representation is a 'statutory obligation' under the NLRA [(National Labor Relations Act)], requiring a union 'to serve the interests of all members without hostility or discrimination . . . , to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (second alteration in original) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir.) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)) *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then 'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration omitted) (quoting *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Thus, a court is required to consider whether a plaintiff's allegations against a union constitutes conduct that is "arbitrary, discriminatory or taken in bad faith." *Figueroa*, 864 F.3d at 229.

After a careful review of the alleged facts, for the reasons discussed below, the Court adopts Judge Bloom's recommendation to dismiss the Complaint because the R&R applied the

appropriate legal standard and correctly concluded that "plaintiffs fail to allege sufficient factual

support" for the "required elements of a duty of fair representation claim." (R&R 12.)

### A. Arbitrary conduct

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the

time of the union's actions, the union's behavior is so far outside a wide range of reasonableness

as to be irrational.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010)

(quoting *O'Neill*, 499 U.S. at 67 (1991)); *see also Lane v. Wakefield*, No. 16-CV-1817, 2016 WL

5118301, at *2 (S.D.N.Y. Sept. 20, 2016) ("The Supreme Court's test for arbitrariness — which

requires that a union behave irrationally — is difficult to meet." (quoting *Acosta v. Potter*, 410 F.

Supp. 2d 298, 311 (S.D.N.Y. 2006))); *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284

(E.D.N.Y. 2015) ("[A] union's conduct can be classified as arbitrary only . . . when it is without

a rational basis or explanation." (internal quotation marks omitted) (quoting *Marquez v. Screen

Actors Guild, Inc.*, 525 U.S. 33, 46 (1998))).

Here, the Complaint does not contain facts suggesting that Defendants acted irrationally

and thus arbitrarily. The Complaint notes the growing opposition in October of 2015 to the

CWA–IBT Committee's initial proposal, including the petition circulated by Legacy AA Agents.

(Compl. ¶ 26.) The Complaint also notes the "numerous communications" directed toward

CWA's Vice President of District 1, Dennis Trainor. (*Id.* ¶ 27.) Trainor agreed to "investigate

the matter, and then further respond." (*Id.*) Assuming the truth of the allegations that

Defendants demanded a CWA–IBT Committee re-vote and made certain misstatements at the

time the tentative agreement was presented to the union members, Plaintiffs offer no facts to

undermine Defendants' public explanation that they were motivated by a concern that the change

sought by Plaintiffs would have "disrupted the seniority" of the Legacy AA Agents. (*Id.* ¶ 38.)

Plaintiffs suggest that such disruption is unlikely because they and their fellow Legacy TWA Agents allegedly constitute a "de minimis" number within the broader AA Agents population. (*Id.*) However, this does not by itself contradict Defendants' explanation, particularly in light of the fact that Plaintiffs, and potentially many of their Legacy TWA Agent colleagues, "have been continuously employed in that capacity for more than two decades[,] several for more than three decades," and would thus surpass a commensurate number of their AA counterparts on the integrated seniority list. (*Id.* ¶ 11.) Regardless, Defendants had an obvious interest in supporting a plan they believed their members would ratify, and "[a] union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct." *Spellacy*, 156 F.3d at 129 (citations omitted). Even if Defendants were ultimately mistaken in the belief that the proposal was unpopular, they would not have breached their duty of fair representation. *See United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372–73 (1990) ("The courts have in general assumed that mere negligence . . . would not state a claim for breach of the duty of fair representation, and we endorse that view today."); *see also Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).

Finally, as the R&R noted, "[h]ad the Union Defendants reshuffled the seniority list in plaintiffs' favor, they would likely have faced claims of discriminatory treatment from thousands of other members whose seniority would have been diminished as a result." (R&R 14.) Thus, accepting the facts as alleged, Defendants' conduct is not without a rational basis or explanation.[4]

---

[4] Nor was the ultimate decision to use length of service with AA to determine placement on the seniority list arbitrary, despite Plaintiffs' efforts to characterize it as such. (Compl. ¶¶ 35,

## B.   Discriminatory conduct

"A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn*, 604 F.3d at 709 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).  A union need not discriminate on the basis of a constitutionally protected category to breach its duty of fair representation.  *See Ramey v. Dist. 141, Int'l Ass'n of Machinists and Aerospace Workers*, 378 F.3d 269, 276–77 (2d Cir. 2004) (holding that a union discriminated against certain of its members when it opposed those members' grant of seniority in order to "punish" them for decertifying the union and not participating in a strike); *see also Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 247 (2d Cir. 1972) (holding that "it is not proper for a bargaining agent in representing all of the employees to draw distinctions among them which are based upon their political power within the union").  However, "[t]he Supreme Court has explained that the duty of fair representation bars only 'invidious' discrimination.'" *Ruisi v. Nat'l Labor Relations Bd.*, 856 F.3d 1031, 1038 (D.C. Cir. 2017) (quoting *O'Neill*, 499 U.S. at 81 (1991)).  "[D]iscrimination is invidious if it . . . arises from prejudice or animus," but "classifications according to seniority and skill level or other employment-related criteria of union members are relevant, rational, and often inevitable." *Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 243 (E.D.N.Y. 2003) (citing *Considine v.*

---

37, 38, 46, 51.)  *See Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473–74 (2d Cir.) (holding that "the union's decision . . .  to integrate the two separate seniority lists based on each flight attendant's 'length of service' cannot fairly be described as either irrational or discriminatory, even though it ultimately, and unfortunately, disadvantaged the plaintiffs" (citation omitted)), *cert. denied*, 137 S. Ct. 313 (2016); *see also Humphrey v. Moore*, 375 U.S. 335, 370–71 (1964) (holding that a union's decision to integrate based on length of service "was neither unique nor arbitrary").

*Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994)); *see also Camelio v. Int'l Bhd. of Teamsters*, 32 F. Supp. 3d 427, 431 (W.D.N.Y. 2014) ("Discrimination demands a desire to act or retaliate based on impermissible classifications . . . ." (citation and internal quotation marks omitted)); *Stephens v. 1199 SEIU, AFL-CIO*, 45 F. Supp. 3d 284, 293–94 (E.D.N.Y. 2014); *cf. Fowlkes*, 790 F.3d at 378 (holding that a union breached its duty of fair representation by refusing to refer a transgender member for work).

Plaintiffs have not pled facts showing that Defendants' conduct was motivated by any discriminatory animus against Legacy TWA Agents. Plaintiffs' allegations that "[a]ll other [Agents] at the Carrier, except Plaintiffs (and their [L]egacy-TWA colleagues), will thus receive credit for . . . all of the seniority that they have earned," (Compl. ¶ 51), does not state facts sufficient to support a claim of discriminatory conduct. The sole difference in treatment alleged by Plaintiffs stems from a prior decision made during the 2001 acquisition, not from discriminatory animus. Such facts cannot sustain a claim that a union discriminated against its members in violation of the duty of fair representation. *See Naugler v. Air Line Pilots Ass'n Intern.*, No. 05-CV-4751, 2012 WL 1215291, at *10 (E.D.N.Y. Apr. 11, 2012) ("Not treating [MidAtlantic Airways] pilots identically to mainline pilots, based on existing agreements setting the terms of employment, does not constitute discrimination."), *aff'd sub nom. Alen v. U.S. Airways, Inc.*, 526 F. App'x 89 (2d Cir. 2013); *see also Flight Attendants in Reunion*, 813 F.3d at 473 ("[A] showing that union action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation because a union by necessity must differentiate among its members in a variety of contexts." (citation and internal quotation marks omitted)); *Vaughn*, 604 F.3d at 712 (holding that "there is no requirement that unions treat their

members identically as long as their actions are related to legitimate union objectives" (citation omitted)).

## C. Bad faith conduct

"Bad faith, which encompasses fraud, dishonesty, and other intentionally misleading conduct, requires proof that the union acted with an improper intent, purpose, or motive." *Vaughn*, 604 F.3d at 709–10 (quoting *Spellacy*, 156 F.3d at 126); *see also Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503*, No. 14-CV-1677, 2015 WL 5474231, at *5 (S.D.N.Y. Aug. 12, 2015) ("An inquiry into whether a union has breached the duty of fair representation by acting in bad faith 'is context-specific and fact-sensitive.'" (quoting *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006))).

The Second Circuit has held that if a plaintiff fails to allege that the union's conduct was impermissible under its own constitution or bylaws, that the conduct vitiated the contractual rights of its members, or that the union prejudiced its members' rightful ability to oppose the union's actions, then a plaintiff cannot establish that the union acted in bad faith in breach of the duty of fair representation. *See Spellacy*, 156 F.3d at 128–29; *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 472–73 (2d Cir. 1999).

In *Spellacy v. Airline Pilots Association–International*, the Second Circuit considered a challenge brought by former pilots of Pan American Airlines ("Pan Am") that their union breached its duty of fair representation by, among other things, violating its constitution and bylaws in adopting an unfavorable training plan, entering into "secret agreements" with the pilots' employer and making material misrepresentations designed to prevent the disclosure of such agreements. *Spellacy*, 156 F.3d at 126–27. The Second Circuit found that the alleged violation of the union's constitution and bylaws could not sustain the plaintiffs' claim because

the union's own interpretation of those documents, "while arguably wrong, [was] not so unreasonable as to constitute a breach of the duty of fair representation." *Id.* at 127. With regard to the alleged "secret agreements," the Second Circuit rejected the plaintiffs' arguments and distinguished prior Second Circuit precedent, holding that such agreements did not amount to bad faith because "the Pan Am pilots had no . . . contractual entitlement" to the purported rights being sacrificed by the union's conduct. *Id.* at 129. The Second Circuit similarly rejected the argument that the union's related misstatements constituted bad faith, because:

> while the [union] delayed confessing its agreement with Pan Am for a period of time (or masked that agreement by claiming that the arbitrator decided the issue), the delay did not prejudice the pilots. The pilots here knew [the union's] position in time to challenge its decision, were aware that Pan Am adopted a training policy contrary to the one advocated by senior pilots, and hired attorneys to file grievances and organize resistance to Pan Am's proposed plan. Under these facts, we cannot say that [the union] acted in bad faith . . . .

*Id.*

One year later in *Sim v. New York Mailers' Union No. 6*, the Second Circuit affirmed a district court's grant of summary judgment to a union alleged to have breached the duty of fair representation while negotiating a wage agreement for New York Times mailroom employees. *Sim*, 166 F.3d at 467–68. The union's membership had initially voted to reject the agreement, and it appeared that the issue would be decided through arbitration. *Id.* at 468. However, union members began circulating a petition calling for a re-vote, which the plaintiffs alleged "[u]nion leadership assisted in the preparation of" and "encouraged members to sign." *Id.* Upon a re-vote, union membership ultimately ratified the contested wage agreement. *Id.* Aggrieved union members brought suit, claiming that the union had breached its duty of fair representation by, among other things, holding a second vote. *Id.* at 472. In rejecting the plaintiffs' claim based on the re-vote, the Second Circuit held that "the [u]nion's decision to permit a second vote . . . did

17

not violate the [u]nion's constitution or bylaws, and cannot, therefore, be deemed misconduct that supports a fair representation claim." *Id.*

Plaintiffs allege that Defendants engaged in bad faith by requiring that the CWA–IBT Committee conduct a re-vote and making various misstatements to CWA–IBT Committee members and their union members while the tentative agreement, which included the ultimate decision that Legacy TWA Agents would not be credited for their pre-2001 service, was being presented. (Compl. ¶¶ 28–50.) Plaintiffs have not pled facts establishing any of the deficiencies recognized in *Spellacy* and *Sim*, or any other conduct alleging a violation of the duty of fair representation. Plaintiffs do not allege that the CWA–IBT Committee's re-vote, or any of the alleged conduct committed by Defendants, violated any constitution or bylaws in effect at the time.[5] *See White v. White Rose Food, a Div. of DiGiogio Corp.*, 237 F.3d 174, 182 (2d Cir.

---

[5] While Plaintiffs allege that a CWA–IBT Committee member leaked the CWA–IBT Committee's initial proposal in violation of an agreement to keep discussions confidential, (Compl. ¶ 16), Plaintiffs do not allege that such conduct violated the constitution or bylaws of CWA, IBT or the CWA–IBT Association. Moreover, such conduct does not "demonstrate a causal connection between the [unions'] alleged misconduct and the outcome of the ratification vote." *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999). Plaintiffs' allegations illustrate that while the CWA–IBT Committee's initial proposal was made in or around June of 2015, the leak did not occur until October 2, 2015. (Compl. ¶¶ 17, 24.) On or around October 17, 2015, the tentative agreement "was presented by Defendants to their respective memberships," and the tentative agreement included Defendants' position opposing a grant of pre-2001 seniority to Legacy TWA Agents. (Compl. ¶¶ 37–38.) The CWA–IBT Committee vote which ultimately reversed the initial proposal did not take place until "on or [around] October 19 or 20, 2015." (Compl. ¶¶ 33–34.) Balloting for member ratification of the tentative agreement did not close until "on or [around] November 30, 2015." (Compl. ¶ 50.) Under the circumstances of this case, where Defendants made their position public shortly after the leak, and more than one month before balloting ultimately closed, Plaintiffs have not alleged a sufficient causal connection between the leak and the ratification of the tentative agreement that failed to credit them for their pre-2001 service. *See Vaughn*, 604 F.3d at 711–12 (dismissing a breach of the duty of fair representation claim "where plaintiffs have failed to plead a causal connection between [their] claim and their injuries").

2001) (holding that a union's failure to allow members to ratify an agreement was not bad faith where the union was not required to do so under its constitution and bylaws).

Furthermore, while Plaintiffs characterize the CWA–IBT Committee's initial proposal as having been "fully resolved and agreed," (Compl. ¶¶ 23, 36), they do not present any allegations from which the Court could construe that the decision created a contractual right or entitlement that was subsequently infringed upon by Defendants' conduct. *See Bejjani v. Manhattan Sheraton Corp.*, 567 F. App'x 60, 63 (2d Cir. 2014) (holding that a failure to inform union members of an agreement that was disadvantageous to the plaintiffs "does not create an inference of bad faith because plaintiffs do not plausibly allege that the [agreement] violated any unambiguous contractual entitlements . . . and plaintiffs do not allege any intentionally misleading conduct with regard to plaintiffs' rights" (alteration, citation and internal quotation marks omitted)); *see also Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005, 1016 (3d Cir. 1977) (finding no breach of the duty of fair representation where the "action does not involve a union attempt to reduce or cancel seniority benefits already conferred upon a minority in a pre-existing agreement" (citations omitted)).

Finally, Plaintiffs have not alleged that Defendants' conduct prejudiced their rightful ability to challenge the tentative agreement that reflected the new seniority decision. The Complaint lists a number of alleged misstatements made during the November 4, 2015 meeting that Defendants held to present the tentative agreement to members, including a statement that members would be able to "grieve any errors" through arbitration once the new seniority list was issued. (Compl. ¶ 46.) Plaintiffs claim that such statements were made to "induce [Legacy TWA Agents'] reliance thereon," notwithstanding the fact "that they would actually not be able

to" challenge their place on the seniority list for reasons other than "clerical or other factual errors." (*Id.* ¶ 47.)

Plaintiffs have not pled facts showing that such statements were *intentionally* misleading. In addition, Plaintiffs do not allege that they or their fellow Legacy TWA Agents in fact relied on such statements in voting to ratify the tentative agreement. Nor do Plaintiffs allege that the limited grounds upon which the seniority list could be challenged were only made public after the tentative agreement had been ratified by union members, thus "trick[ing] [them] into believing that their rights were preserved until it was too late to protest the [union's] action." *Spellacy*, 156 F.3d at 129 (citations omitted). Plaintiffs allege that the tentative agreement that was presented to members in October of 2015, before the allegedly misleading statements were made, contained a letter of agreement with "new, substituted language" reflecting the decision not to credit Legacy TWA Agents for their pre-2001 service. (Compl. ¶ 37.) Plaintiffs do not allege that this new letter of agreement did not also disclose the permissible bases for challenging their placement on the seniority list. Plaintiffs cannot establish that Defendants' statements at the November 4, 2015 meeting were intentionally misleading if Defendants had in fact made the permissible bases for challenging the seniority list public to their members several weeks earlier. Nor can Plaintiffs establish that Defendants' statements were intentionally misleading if the permissible bases for challenge were made public to their members before balloting closed on or around November 30, 2015.

Even assuming the other misstatements that Plaintiffs allege Defendants made at the November 4, 2015 meeting are sufficient to establish bad faith, they lack a causal connection to Plaintiffs' alleged harm. Plaintiffs allege that Attorney Peifer "falsely asserted that the re-vote had been conducted because, on the date of the original vote, one [CWA–IBT] Committee

member had been absent." (*Id.* ¶ 43.) However, Plaintiffs expressly note that this statement was immediately "corrected" by another CWA–IBT Committee member, severing any causal link between that alleged misstatement and the union members' ultimate ratification of the tentative agreement that included the decision not to credit Legacy TWA Agents for their pre-2001 service. (*Id.*) Plaintiffs further allege that a CWA–IBT Committee member claimed to have voted "no" during all three CWA–IBT Committee votes regarding Legacy TWA Agent seniority, but the connection between this misstatement and Plaintiffs' alleged harm is even more tenuous. (*Id.* ¶ 44.) Furthermore, Plaintiffs note that CWA–IBT Committee members had already disclosed to union members earlier in the meeting that the first vote "had been unanimous."[6] (*Id.* ¶ 43.)

While Plaintiffs protest that "before a single document is produced, a single interrogatory answered, or a single word of deposition testimony taken," they must "not only plead, but state specific facts affirmatively demonstrating Defendants' bad faith," (Pls. Obj. 5), such facts are necessary to defeat Defendants' motion to dismiss the Complaint. Plaintiffs have failed meet the necessary pleading requirement.[7]

---

[6] Plaintiffs' Complaint further alleges that Attorney Peifer falsely asserted that Legacy TWA Agents could not be credited for their pre-2001 service because "Defendants would then have to credit all of their members with the higher pay scale which was then in effect for American Eagle ('AE') employees, and which was to be continued upon, and notwithstanding, integration." (Compl. ¶ 45.) Plaintiffs allege, however, that "Defendants did subsequently reverse themselves, to honor the higher AE pay scale for non-AE members." (*Id.*) Without additional facts regarding who "American Eagle employees" refers to, how such employees were treated differently than "non-AE members" or Legacy TWA Agents, and why this alleged misstatement constitutes a breach of the duty of fair representation, the Court is unable to further assess the sufficiency of this allegation. (*Id.*)

[7] Plaintiffs also argue that Judge Bloom erred because she assumed the truth of certain factual assertions made by Defendants and did not consider the public policy ramifications of her recommendation. (Pls. Obj. 6–9.) The Court rejects Plaintiffs' arguments. With respect to the

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Bloom's R&R and grants Defendants' motion to dismiss. The Court grants Plaintiffs sixty days to amend the Complaint. If Plaintiffs fail to amend the Complaint within sixty days, the Court will dismiss this action with prejudice.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 29, 2017
      Brooklyn, New York

---

former argument, Plaintiffs assert that Judge Bloom should not have assumed that accounting for Legacy TWA Agents' time at TWA would have been disruptive to Legacy AA Agents and would have exposed the union to countervailing claims. (Pls. Obj. 6–7.) However, the Court finds Judge Bloom's reasoning on this point appropriate and supported by the Second Circuit's decision in *Flight Attendants in Reunion v. American Airlines, Inc. See Flight Attendants in Reunion*, 813 F.3d at 474 (affirming the district court's dismissal of the complaint and noting that granting TWA flight attendants seniority based on pre-2001 service "would have resulted in other American Airlines flight attendants losing their relative seniority, and such a juggling of the existing seniority ladder would have exposed the union to countervailing claims from those flight attendants" (citation and internal quotation marks omitted)). With respect to Plaintiffs' public policy argument that adopting the R&R would "do real harm to the duty of fair representation [] claim," (Defs. Obj. 7), the Court finds that it is obligated to measure the sufficiency of such claims based on the law as established by the Supreme Court and Second Circuit. This law grants broad deference to unions in conducting the business of representing their members, and the Court declines to evaluate Plaintiffs' claims based on a different standard. *See Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 286 (E.D.N.Y. 2015) (rejecting the plaintiffs' argument that it should "decline to accord the [u]nion the wide latitude that is typically given to unions" for reasons of "public policy" (citation omitted)).