UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

RICHARD RIVERA, LINDA MCLAUGHLIN,
MELANIE Y. TREADWELL DONAHUE, MARTHA
GARCIA, GIOVANNA GANGEMI, LAURA ORR,
VERA DANIELS, ANN HAMILTON O'REILLY,
MARIELANA DIDOMENICO LATOSA, CYNTHIA
GONZALEZ, ANNA BIRARDI, NICOLE GARCIA,
ROSE BISCONTI-GERMANI, RUBY INGRAM,
JOHN MARCHETTA, MEENA MAKHIJANI, ALBA
RODRIGUEZ, ROXANNE HARTFIELD, CLETANE
"CLEO" BAZILE, LINDA SUNDACK, KARINA
ULLAH, KENNETH DEFAY, LYNDA ANN ZELL,
ARLENE MACK, MYRA DELESTON, MINNIE
KAPOOR, JACQUELINE MORRIS, LINDA
DIASPARRA, MAX PIERROT, MARY MARGARET
SENTENO-JOSEPH, JOYCE SMIRMAN-JOHNSON,
GLORIA JEANNITON, JENI D. RYMER,
MIGDALIA CEPEDA, HERMIA CHANG, GISELLE
CARSENI-HAVITERS, ANNA MARIA CUPIDO,
LORNA FARRINGTON, BERDETTE THOMPSON,
HUIWUANG "KATY" WANG, JAVIER LOPEZ,
CARLENE BOYD, JANNIE SALCE, LORRAINE
TITLEY, MARIA G. MONTALVO, LEIGH
SHAFFER and ANNA HERRERA,

**MEMORANDUM & ORDER**
16-CV-1673 (MKB)

                Plaintiffs,

                v.

COMMUNICATION WORKERS OF AMERICA,
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, COMMUNICATION WORKERS OF
AMERICA – INTERNATIONAL BROTHERHOOD
OF TEAMSTERS PASSENGER SERVICE
EMPLOYEES ASSOCIATION, a/k/a CWA-IBT
ASSOCIATION, and JOHN AND JANE DOES 1–20,

                Defendants.

-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

Plaintiffs, proceeding *pro se*, filed the above-captioned action against the Communication Workers of America ("CWA"), International Brotherhood of Teamsters ("IBT"), Communication Workers of America – International Brotherhood of Teamsters Passenger Service Employees Association a/k/a CWA–IBT Association (the "CWA–IBT Association"), and John and Jane Does 1–20, alleging breach of the duty of fair representation under the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and federal common law. (Compl., Docket Entry No. 1.) Plaintiffs filed an Amended Complaint on December 28, 2017.[1] (Am. Compl., Docket Entry No. 99.) Currently before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint. (Defs. Mot. to Dismiss ("Def. Mot."), Docket Entry No. 103.) For the reasons set forth below, the Court grants Defendants' motion and grants Plaintiffs sixty (60) days from the date of this Memorandum and Order to file a second amended complaint.

**I.  Background**

The Court assumes familiarity with the facts and procedural posture of this action as discussed in its prior decision, *Rivera v. Comm'n Workers of Am.*, No. 16-CV-1673, 2017 WL 4338754, at *1 (E.D.N.Y. Sept. 29, 2017), and provides only a summary of the pertinent facts and procedural background.

---

[1] Defendants moved to dismiss the Complaint for failure to state a claim and for failure to join an indispensable party pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure on October 28, 2016. (Defs. Oct. 28, 2016 Mot. to Dismiss ("Defs. Oct. Mot."), Docket Entry No. 83.) On November 15, 2016, the Court referred Defendants' motion to Magistrate Judge Lois Bloom for a report and recommendation. (Order dated Nov. 15, 2016.) By report and recommendation dated July 26, 2017 (the "R&R"), Judge Bloom recommended that the Court dismiss the Complaint and grant Plaintiffs leave to amend. (R&R, Docket Entry No. 86.) On September 29, 2017, the Court adopted Judge Bloom's R&R, dismissing Plaintiffs' Complaint and granting Plaintiffs leave to amend. (Memorandum and Order dated September 29, 2017 ("September 2017 Decision"), Docket Entry No. 92.)

Plaintiffs are passenger service agents who were employed by Trans World Airlines ("TWA"), an airline operator, acquired by American Airlines ("AA") in 2001 (the "Acquisition"). (Am. Compl. ¶¶ 1, 11.) Following the Acquisition, all TWA Agents, including Plaintiffs, became AA employees and were assigned a date-of-hire of April 10, 2001, effectively treating them as new hires and not accounting for their time working at TWA. (*Id.* ¶¶ 1, 44.) Plaintiffs allege that after the Acquisition, certain legacy AA Agents (the "Legacy AA Agents") blamed legacy TWA Agents (the "Legacy TWA Agents") for the loss of certain benefits, including profit-sharing. (*Id.* ¶¶ 12–13.)

In November of 2011, AA's parent company, AMR Corporation ("AMR"), filed for bankruptcy. (*Id.* ¶ 14.) Certain Legacy AA Agents allegedly "believed that AA's acquisition of TWA had been the cause, or one of the causes" of AMR's bankruptcy, (*id*), and due to this belief, they allegedly "became, hostile to, resented, held a grudge or were otherwise biased against" Legacy TWA agents, including Plaintiffs, because they "suffered various . . . adverse effects . . . in respect of compensation, working conditions and other terms of employment," due to the bankruptcy, (*id*. ¶ 14).

In 2013, AMR emerged from bankruptcy and AA subsequently merged with US Airways. (*Id.* ¶ 15.) The union representatives of AA and US Airways Agents, CWA and IBT, jointly established the CWA-IBT Association. (*Id.* ¶¶ 12–14.) The CWA–IBT Association, elected a seven-member committee (the "CWA-IBT Committee") charged with, *inter alia*, negotiating a new employment contract with the merged AA-US Airways airline carrier (the "Carrier") that included a single, unified employee list in order of seniority. (*Id.*)

The CWA–IBT Committee had originally voted in favor of proposing a letter of agreement to the Carrier, which included a plan (the "Plan") to credit Legacy TWA Agents who

joined AA at the time of the 2001 acquisition with their pre-2001 employment at TWA, however a re-vote was subsequently conducted, and the Plan was reversed. (*Id.* ¶¶ 22–24, 41–42.) Following the re-vote, Defendants issued a statement to its membership explaining that the original plan to credit Legacy TWA Agents would have "disrupted" the seniority of Legacy AA Agents. (*Id*. ¶ 44.) Defendants also conducted several road shows around the country explaining the re-vote and asserting that Plaintiffs' seniority could not be honored because Defendants "would then have [] to credit all of their members with the higher pay scale." (*Id.* ¶¶ 48–51.)

Plaintiffs allege that Defendants breached their duty of fair representation by preventing Legacy TWA Agents from receiving seniority status that reflects their time at TWA. (*Id.* ¶¶ 31.) In addition, Plaintiffs allege that Defendants were "made aware, of the hostility, bias, resentment, [and] grudges" that certain Legacy AA Agents had toward Plaintiffs and reversed the prior decision to credit Legacy TWA Agents in order "to placate and accommodate" Legacy AA Agents who harbored these negative feelings. (*Id.* ¶¶ 32–33.) Plaintiffs also allege that, notwithstanding Defendants' knowledge of Legacy AA Agents' ill feelings towards Plaintiffs and other Legacy TWA Agents, Defendants "not only entertained, but affirmatively encouraged, opposition to the Plan, particularly among [L]egacy AA [Agents]." (*Id.* ¶¶ 31.)

## II. Discussion

### a. Standards of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v.*

*N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Breach of duty of fair representation

Defendants argue that Plaintiffs "fail to state facts in the Amended Complaint that establish a breach of the duty of fair representation." (Def. Mot. 4.)

Plaintiffs assert that the Amended Complaint sufficiently pleads "not merely one, but all three criteria for finding of a breach of the duty of fair representation." (Pl. Mem. in Opp'n to Defs. Mot. ("Pl. Mem.") 7, Docket Entry No. 73.) Plaintiffs argue that Defendants' actions were in breach of their duty of fair representation because they voted against [Plaintiffs'] seniority "at the behest of some members of their dominant membership group on the basis of the latter's

5

hostility toward [Plaintiffs] for actions in which [Plaintiffs] had not even been involved . . . ."
(*Id.*)

"The duty of fair representation is a 'statutory obligation' under the NLRA [(National Labor Relations Act)], requiring a union 'to serve the interests of all members without hostility or discrimination, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Figueroa v. Foster*, 864 F.3d 222, 229 (2d Cir. 2017) (quoting *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015)). "The objective of the duty of fair representation is to provide substantive and procedural safeguards for minority members of the collective bargaining unit." *Flight Attendants in Reunion v. Am. Airlines, Inc.*, 813 F.3d 468, 473 (2d Cir. 2016) (quoting *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798 (2d Cir. 1974)) *cert. denied*, 137 S. Ct. 313 (2016). "A union breaches its duty of fair representation if its actions with respect to a member are arbitrary, discriminatory, or taken in bad faith." *Figueroa*, 864 F.3d at 229 (quoting *Fowlkes*, 790 F.3d at 388); *see also Flight Attendants in Reunion*, 813 F.3d at 473. If a plaintiff shows "that the union's actions meet this standard, the plaintiff must then 'demonstrate a causal connection between the union's wrongful conduct and the plaintiff's injuries.'" *Pathania v. Metro. Museum of Art*, 563 F. App'x 42, 44 (2d Cir. 2014) (alteration omitted) (quoting *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). "A court's examination of a union's representation 'must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Alen v. U.S. Airways, Inc.*, 526 F. App'x 89, 91 (2d Cir. 2013) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)). Neither conclusory allegations nor "mere negligence" by the union in its enforcement of a collective bargaining agreement is sufficient to state a claim.

*Mancus v. The Pierre Hotel*, 45 F. App'x 76, 77 (2d Cir. 2002) (quoting *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 372 (1990)).

Plaintiffs' Amended Complaint is substantially the same as their original Complaint, with the exception of two newly alleged facts. In the Amended Complaint, Plaintiffs allege: (1) that certain Legacy AA Agents were "hostile to, resented, held a grudge or were otherwise biased against, and/or otherwise harbored ill feelings toward, the Legacy-TWA [Agents], including Plaintiffs," due to the Bankruptcy and a loss of benefits; and (2) that Defendants were aware of the alleged hostility and resentment certain Legacy AA Agents harbored, and reversed their decision regarding the Plan to "placate and accommodate" these agents, (Am. Compl. ¶¶ 14, 32–33.)

Although Plaintiffs claim that Defendants had knowledge of the ill feelings that certain Legacy AA Agents allegedly had towards Plaintiffs, as explained below, Plaintiffs nevertheless fail to allege any facts that plausibly suggest that Defendants actions were arbitrary, discriminatory, or in bad faith.

### i. Arbitrary Conduct

"A union's actions are 'arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational.'" *Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (quoting *O'Neill*, 499 U.S. at 67 (1991)); *see also Greene v. St. Barnabas Hosp.*, 727 F. App'x 21, 23 (2d Cir. 2018) (same); *Lane v. Wakefield*, No. 16-CV-1817, 2016 WL 5118301, at *2 (S.D.N.Y. Sept. 20, 2016) ("The Supreme Court's test for arbitrariness — which requires that a union behave irrationally — is difficult to meet." (quoting *Acosta v. Potter*, 410 F. Supp. 2d 298, 311 (S.D.N.Y. 2006))); *Perero v. Hyatt Corp.*, 151 F. Supp. 3d 277, 284 (E.D.N.Y. 2015) ("[A]

7

union's conduct can be classified as arbitrary only . . . when it is without a rational basis or explanation." (internal quotation marks omitted) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 46 (1998))).

Plaintiffs' allegation that Defendants' decision was made "to placate and accommodate" certain Legacy AA Agents who harbored "hostility, bias, resentment, grudges and/or other ill feelings," toward Plaintiffs and other Legacy TWA Agents is not contrary to Defendants' explanation that crediting Legacy TWA Agents would have "disrupted" the seniority of legacy AA Agents.

Defendants conducted road shows across the country and explained that the Plan was reversed to avoid crediting all Agents with seniority at a higher pay scale. (*Id.* ¶ 51.) In addition, Defendants issued a statement to their members explaining that they sought to reverse the original plan to avoid causing a disruption in the seniority of legacy AA Agents. (*Id.* ¶ 44.)

Defendant's explanation provides a rational basis for its decision to reverse the Plan. As the Court determined in the September 2017 Decision, Defendants' concern expressed through its public explanation is not a breach of Defendants' duty of fair representation. *Rivera*, 2017 WL 4338754, at *6; *see Perero*, 151 F. Supp. 3d at 285 ("[A] union's reasoned decision to support the interests of one group of employees over the competing interests of another group does not constitute arbitrary conduct." (quoting *Spellacy*, 156 F.3d at 129)); *see also Vaughn*, 604 F.3d at 712 (stating that "there is no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives" and "[t]he complete satisfaction of all who are represented is hardly to be expected" (internal quotation marks omitted)). Plaintiffs merely allege that certain Legacy AA Agents harbored ill feelings towards them and Defendants were aware of these feelings and "accommodated" certain legacy AA

8

Agents when they decided to reverse their opinion. Plaintiffs have offered no new facts in their Amended Complaint that plausibly show that Defendants' explanation for reversing the Plan, as a means of avoiding disruption, falls "so far outside a wide range of reasonableness as to be irrational." *O'Neill,* 499 U.S. at 67 (internal citation omitted). Given the deference that courts must extend to collective bargaining negotiations, the Amended Complaint does not allege facts that would plausibly state a claim that Defendants acted arbitrarily in reversing the Plan. *In re AMR Corp.*, No. 11-CV-15463, 2014 WL 2508729, at *5 (S.D.N.Y. June 3, 2014) (finding that plaintiffs allegations were not plausible given "the broad latitude that the [c]ourt must extend to such collective bargaining negotiations.").

      ii.      **Discriminatory conduct**

"A union's acts are discriminatory when 'substantial evidence' indicates that it engaged in discrimination that was 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn*, 604 F.3d at 709 (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)). "Although a union may not, without a legitimate purpose, take action favoring some of its members at the expense of others, a showing that union action has disadvantaged a group of members, without more, does not establish a breach of the duty of fair representation because a union by necessity must differentiate among its members in a variety of contexts." *Flight Attendants in Reunion*, 813 F.3d at 473 (first quoting *Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 277 (2d Cir. 2004) and then quoting *Haerum*, 892 F.2d at 221 (quotation marks omitted). A union need not discriminate on the basis of a constitutionally protected category to breach its duty of fair representation. *See Ramey*, 378 F.3d at 276–77 (holding that a union discriminated against certain of its members when it opposed those members' grant of seniority in order to "punish" them for decertifying the

9

union and not participating in a strike); *see also Sanders v. Air Line Pilots Ass'n Int'l*, 473 F.2d 244, 247 (2d Cir. 1972) (holding that "it is not proper for a bargaining agent in representing all of the employees to draw distinctions among them which are based upon their political power within the union"). However, "[t]he Supreme Court has explained that the duty of fair representation bars only 'invidious' discrimination." *Ruisi v. Nat'l Labor Relations Bd.*, 856 F.3d 1031, 1038 (D.C. Cir. 2017) (quoting *O'Neill*, 499 U.S. at 81 (1991)). "[D]iscrimination is invidious if it . . . arises from prejudice or animus," but "classifications according to seniority and skill level or other employment-related criteria of union members are relevant, rational, and often inevitable." *Cooper v. TWA Airlines, LLC*, 274 F. Supp. 2d 231, 243 (E.D.N.Y. 2003) (citing *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1357 (10th Cir. 1994)); *see also Camelio v. Int'l Bhd. of Teamsters*, 32 F. Supp. 3d 427, 431 (W.D.N.Y. 2014) ("Discrimination demands a desire to act or retaliate based on impermissible classifications . . . ." (citation and internal quotation marks omitted)); *Stephens v. 1199 SEIU, AFL-CIO*, 45 F. Supp. 3d 284, 293–94 (E.D.N.Y. 2014) (explaining that discriminatory conduct in the context of duty of fair representation is "based upon impermissible or immutable classifications such as race or other constitutionally protected categories"); *see, e.g., Fowlkes*, 790 F.3d at 378 (holding that a union breached its duty of fair representation by refusing to refer a transgender member for work).

The Amended Complaint fails to sufficiently allege discriminatory conduct by Defendants. Plaintiffs argue that the "hostility, bias, resentment, grudges and/or other ill feelings," of certain legacy AA Agents fits within the "very definition of 'prejudice or animus' upon which action may not permissibly be based." (Pl. Mem. 4.) Although Plaintiffs allege that Defendants had knowledge of the "hostility, bias, resentment, grudges and/or other ill feelings" harbored by legacy AA Agents and that despite these feelings Defendants acted to accommodate

AA Agents, Plaintiffs fail to allege plausible facts that would support a finding that in doing so, Defendants acted in a manner that was discriminatory.

In addition, Plaintiffs fail to allege that Defendants engaged in any discriminatory conduct or had a "desire to act or retaliate [against them] based," on Defendants' own "hostility, bias, resentment, grudges and/or other ill feelings." *See Camelio*, 32 F. Supp. 3d at 431. Furthermore, "a union's acts are only discriminatory if they are 'intentional, severe, and unrelated to legitimate union objectives.'" *Vaughn*, 604 F.3d at 712 (2d Cir. 2010) (*quoting Lockridge*, 403 U.S. at 301.) Defendants decided to reverse their decision because accounting for Legacy TWA Agents' time at TWA would have been disruptive to Legacy AA Agents and exposed the union to countervailing claims.

Plaintiffs also suggest that because they are "vastly outnumbered" by Legacy AA Agents, this "plainly suggests that Defendants' affirmative acts to reverse" their seniority "was based upon [their] lack of 'political power within the union,'" therefore, Defendants' decision was discriminatory. (Pl. Mem. 5.) Plaintiffs have not pled facts to suggest that Defendants' decision was motivated by the number of legacy TWA Agents within the union. Plaintiffs note that they represent a "*de minimis*" number among the broader AA Agent population. (Am. Compl. ¶ 44.) However, this fact, without more, does not support a claim that Defendants engaged in discriminatory conduct. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action supported by mere conclusion statement, do not suffice.").

### iii. Bad faith conduct

"Bad faith, which encompasses fraud, dishonesty, and other intentionally misleading conduct, requires proof that the union acted with an improper intent, purpose, or motive." *Vaughn*, 604 F.3d at 709–10 (quoting *Spellacy*, 156 F.3d at 126); *see also Greene*, 727 F. App'x

11

at 24 ("A union acts in bad faith when it acts with an improper intent, purpose or motive." (citations omitted)); *Walsh v. Int'l Bhd. of Elec. Workers (I.B.E.W.) Local 503*, No. 14-CV-1677, 2015 WL 5474231, at *5 (S.D.N.Y. Aug. 12, 2015) ("An inquiry into whether a union has breached the duty of fair representation by acting in bad faith 'is context-specific and fact-sensitive.'" (quoting *Acosta v. Potter*, 410 F. Supp. 2d 298, 308 (S.D.N.Y. 2006))). "Tactical decisions and mere negligence do not amount to bad faith." *Greene*, 727 F. App'x at 24 (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43–44 (2d Cir. 1989). The Second Circuit has held that if a plaintiff fails to allege that the union's conduct was impermissible under its own constitution or bylaws, that the conduct vitiated the contractual rights of its members, or that the union prejudiced its members' rightful ability to oppose the union's actions, then a plaintiff cannot establish that the union acted in bad faith in breach of the duty of fair representation. *See Spellacy*, 156 F.3d at 128–29; *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465, 472–73 (2d Cir. 1999).

Plaintiffs allege that Defendants engaged in bad faith conduct by entertaining and encouraging opposition to the Committee's original Plan despite Defendants' knowledge of Legacy AA Agents' ill feelings. (Compl. ¶ 32.) In addition, Plaintiffs suggest that Defendants engaged in bad faith conduct by knowingly "placating" and "accommodating" Legacy AA Agents that harbored ill feelings towards Plaintiffs. (Am. Compl. ¶ 32.) Plaintiffs also reallege that Defendants engaged in bad faith by encouraging certain Legacy AA Agents to communicate their objections and opposition to the Plan to Dennis Trainor, Vice President of District 1 of Defendant CWA. (*Id*. ¶ 33.)

Plaintiffs have not included facts in their Amended Complaint that suggest that Defendants engaged in any bad faith conduct. Plaintiffs have not alleged that any of the conduct

described in the Amended Complaint violated any of the union's bylaws or its constitution. *See Hoffmann v. Schiavone Contracting Corp.*, 630 F. App'x 36, 39 (2d Cir. 2015) (finding that a union did not breach its duty of fair representation where the union's bylaws did not address the defendant union's conduct); *Hoffman v. Schiavone Contracting Corp.*, No. 11-CV-2346, 2014 WL 3534009, at *6 (E.D.N.Y. July 16, 2014) (same). Further, the fact that Defendants entertained and encouraged opposition to the Committee's original agreement cannot be deemed to be in bad faith given the inherent role of a union in representing all employees subject to a collective bargaining agreement. *Spellacy*, 156 F.3d at 126 (stating that a union is required "to represent fairly all employees subject to the collective bargaining agreement." (citing *O'Neill*, 499 U.S. 65, 74 (1991))). In addition, the Amended Complaint is deficient with respect to any new allegations that suggest Defendants were dishonest, engaged in fraud, or other intentionally misleading conduct." *Vaughn*, 604 F.3d at 709–10.

Plaintiffs have neither alleged that Defendants' actions were arbitrary, discriminatory, or in bad faith, nor have they alleged any facts from which the Court could infer such conduct. Accordingly, the Court grants Defendants' motion to dismiss the Amended Complaint. The Court grants Plaintiffs one additional opportunity to file an amended complaint.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss. The Court grants Plaintiffs sixty (60) days to file a second amended complaint. If Plaintiffs fail to file a second amended complaint within sixty days, the Court will dismiss this action with prejudice.

Dated: December 18, 2018
      Brooklyn, New York

SO ORDERED:

         s/ MKB
MARGO K. BRODIE
United States District Judge